IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTA LEE SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 21-203 |
| vs. | ) |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

ORDER

AND NOW, this 7th day of June 2022, having considered the parties' motions for summary judgment the Court will order judgment in Defendant's favor except as to costs.[2] Substantial evidence supports the Administrative Law Judge's ("ALJ") decision to deny Plaintiff's applications for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") pursuant to Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. Therefore, the Court will affirm the decision. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).[3]

---

[1]   Kilolo Kijakazi is substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d). This change does not impact the case. 42 U.S.C. § 405(g). The Clerk is directed to amend the docket accordingly.

[2]   Defendant has asked that costs be taxed against Plaintiff but has not argued costs. Accordingly, the order excludes an award of costs. *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996) (explaining that "conclusory assertions" are insufficient for bringing an issue before the courts).

[3]   Plaintiff challenges the final agency decision denying her applications for DIB and SSI benefits. 20 C.F.R. §§ 404.981, 416.1481 (explaining the ALJ's decision is final when the Appeals Council denies the claimant's request for review). She argues that the ALJ erred in many respects, most notably by failing to evaluate the medical findings of Dr. Cole McCracken. As explained herein, the Court finds that the ALJ supported the decision with substantial

evidence and that his failure to address Dr. McCracken's findings had no impact on the outcome of Plaintiff's case.

The Court reviews the ALJ's decision for "substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). ALJs must provide sufficient explanation for their findings in a decision to facilitate reviewing courts' "meaningful judicial review." *Fargnoli v. Massanari*, 247 F.3d 34, 40 n. 4 (3d Cir. 2001) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000)). That is, an ALJ must support his decision with "an accurate and logical bridge between the evidence and the result." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citations omitted). Therein ALJs must acknowledge and explain their rejection of "pertinent or probative evidence." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008) (citing *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). If an ALJ fails "to consider all of the relevant and probative evidence," the reviewing court may not "rectify this error by relying on medical records found in its own independent analysis." *Fargnoli*, 247 F.3d at 44 n.7 (citing *SEC v. Chenery Corporation*, 318 U.S. 80 (1943)). However, remand is not always necessary if an ALJ's error was inconsequential, *i.e.*, it is very likely that remand would lead to the same result. *Pack v. Comm'r of Soc. Sec.*, No. CV 20-1128, 2021 WL 3682151, at *2 n.2 (W.D. Pa. Aug. 19, 2021) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (explaining remand is unnecessary where it is "predictable with great confidence" that the same decision will be reached)). It is therefore incumbent on the challenger to explain why the errors alleged "made any difference" in the outcome of his or her case. *Holloman v. Comm'r Soc. Sec.*, 639 Fed. Appx. 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 413 (2009)).

To determine disability under both Title II and Title XVI of the Act, ALJs use a five-step evaluation. *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 492 (W.D. Pa. 2005). At step one, the ALJ asks whether the claimant is engaged in "substantial gainful activity." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (citing 20 C.F.R. § 404.1520(a)); 20 C.F.R. § 416.920(a)(4)(i)). At step two, the ALJ asks whether the claimant has any severe, medically determinable physical or mental impairments. *Plummer*, 186 F.3d at 428 (citation omitted). At step three, the ALJ compares the evidence of the claimant's impairment or impairments to criteria for a list of presumptively disabling impairments that appear in the regulations at 20 C.F.R., Pt. 404, Subpt. P., Appx. 1. *Id.* (citation omitted). A finding in the claimant's favor at this third step ends the evaluation to his or her benefit without further investigation. *See id.* If the claimant has no impairment that meets the criteria for a presumptively disabling impairment, then the analysis moves to step four where the ALJ must determine the claimant's residual functional capacity ("RFC") and further find whether such RFC permits a return to "past relevant work." *Id.* (citation omitted). If the claimant cannot return to past work, then the ALJ moves to step five and must identify other work that the claimant could do with his or her RFC and vocational

characteristics that offers a significant number of jobs nationally. *Id.* If there is no appropriate alternative work, the claimant will be found to be disabled.

In this matter, step four with its RFC determination is the step most relevant to Plaintiff's argument that the ALJ's decision is unsupported by substantial evidence. Plaintiff also advances several arguments against the way that the ALJ questioned the vocational expert ("VE") at Plaintiff's hearing. But arguments concerning how an ALJ questioned the VE who testified at a claimant's hearing are often just restatements of challenges to the RFC determination. *Rutherford*, 399 F.3d at 554 ("[O]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself."). The RFC is a finding of a claimant's maximum sustained work ability. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). In finding a claimant's RFC, the ALJ must consider limitations that arise from any medically determinable impairment regardless of its severity. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Medical opinion and prior administrative medical findings are very relevant to RFC determinations, and the regulations specify how such evidence should be considered by ALJs at 20 C.F.R. §§ 404.1520c and 416.920c. In this case, the ALJ found Plaintiff could perform a "light work" RFC with added exertional and non-exertional limitations. (R. 22). In the many arguments she advances before the Court, Plaintiff's case for remand or reversal comes down to this: she believes the RFC reflects abilities beyond her maximum capacity for work on a sustained basis.

Before addressing Plaintiff's arguments as they pertain to the RFC, the Court very briefly addresses what could be construed as a challenge to the ALJ's step two severe, medically determinable impairments finding. Plaintiff appears to argue that because the ALJ failed to consider Dr. McCracken's findings—an error discussed in greater detail below—he missed Dr. McCracken's diagnoses of depression and anxiety which would have constituted objective medical evidence of impairments. The Court finds no error. The ALJ acknowledged both depression and anxiety among Plaintiff's medically determinable impairments. (R. 18—19). He included the former among Plaintiff's severe impairments but determined that Plaintiff's anxiety was not severe. (*Id.*). Further, when an ALJ finds even one severe, medically determinable impairment at step two, any alleged failure to find additional such impairments is harmless because one impairment is enough to move the evaluation forward in the claimant's favor. *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."). Accordingly, the Court rejects Plaintiff's concern that the ALJ overlooked evidence relevant to the step-two inquiry of the five-step evaluation.

Turning to the RFC determination, Plaintiff argues that the ALJ downplayed her symptoms arising from diabetic neuropathy and cites for support two social security rulings ("SSR"), SSR 16-3P and SSR 96-8P. SSR 16-3P explains how ALJs should consider claimants' alleged symptoms, first determining whether there is a medically determinable impairment that

3

could cause the symptom(s) alleged and only then evaluating the symptoms' characteristics. 2017 WL 5180304, at *3—4 (S.S.A. Oct. 25, 2017). SSR 96-8P elaborates on the RFC determination process and the narrative-discussion requirement, that is, the necessity of an explanation for how the evidence supports the RFC. 1996 WL 374184 at *7 (S.S.A. July 2, 1996). The Court discerns no error in the ALJ's consideration of Plaintiff's alleged symptoms from diabetic neuropathy toward the RFC. The ALJ acknowledged that Plaintiff alleged diabetic nerve damage in her lower extremities that felt worse with weight gain. (R. 23). The ALJ noted that Plaintiff's neuropathy improved at least partially with her treatment for diabetes. (*Id.*). The ALJ found that this and Plaintiff's other physical conditions would be adequately accommodated by "light work with postural, visual, and environmental restrictions." (R. 27). The Court discerns no error in the ALJ's analysis and will not "re-weigh" the evidence that the ALJ already considered. *Krinjeck v. Saul*, 549 F. Supp. 3d 428, 430 (W.D. Pa. 2021) (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011)).

Next, the Court addresses Plaintiff's argument that the ALJ failed to consider the combined effect of her impairments toward the RFC finding. Her argument in this regard is twofold: she argues broadly that the ALJ failed to consider the combined effect of her severe and non-severe impairments and goes on to argue that the ALJ failed to consider the combined effect of her diabetes mellitus in combination with obesity and borderline intellectual functioning in violation of SSR 14-2P. She also frames her argument in this regard as a challenge to the ALJ's purported failure to present her diabetes mellitus to the VE in combination with her obesity and borderline intellectual functioning impairments. But, as the Court explained above, such critiques of ALJ-VE colloquies are, at base, RFC challenges. SSR 14-2P explains how ALJs ought to employ the five-step sequential evaluation for claimants with diabetes mellitus. It directs ALJs to consider the combined effect of diabetes mellitus with other medically determinable impairments. 2014 WL 2472008, at *6 (S.S.A. June 2, 2014) ("The combined effects of DM and another impairment(s) can be greater than the effects of each of the impairments considered separately. We consider all work-related physical and mental limitations, whether due to an adult's DM, other impairment(s), or combination of impairments.").

The Court rejects Plaintiff's argument because it has no reason to believe the ALJ did not consider the combined effect of Plaintiff's severe and non-severe impairments, or the combined effect of Plaintiff's diabetes mellitus, obesity, and borderline intellectual functioning impairments. The ALJ acknowledged all of Plaintiff's impairments, including her non-severe impairments of borderline intellectual functioning and generalized anxiety disorder. (R. 19). He indicated he would consider these with Plaintiff's other medically determinable impairments to assess her RFC. (R. 19). In his discussion of the evidence pertaining to the RFC, the ALJ discussed evidence of anxiety (R. 25), diabetes (R. 23—24), obesity (R. 25), and IQ test scores indicative of borderline intellectual functioning. (R. 26). Based on his thorough review of the evidence, the Court has no reason to disbelieve the ALJ's assertion that he accounted for all of Plaintiff's impairments in the RFC. (R. 19). Where the Court has no reason to believe the ALJ

did not account for all of Plaintiff's impairments, it takes the ALJ "at his word." *Jones v. Comm'r of Soc. Sec.*, 297 Fed. Appx. 117, 120 (3d Cir. 2008).

Relatedly, Plaintiff has argued that the ALJ's consideration of her borderline intellectual functioning was inadequate. She cites an out of Circuit case that she argues shows VEs must consider a significant non-exertional impairment like borderline intellectual functioning to provide testimony that accurately reflects a claimant's work prospects. (Doc. No. 13, pg. 19 (citing *Swope v. Barnhart*, 436 F.3d 1023, 1025 (8th Cir. 2006)). However, the ALJ explained that he accounted for both Plaintiff's severe and non-severe medically determinable impairments which includes borderline intellectual functioning. (R. 19). The ALJ accommodated Plaintiff's non-exertional impairments by limiting her to simple tasks, simple decisions, and stable work environments. (R. 22). Then the ALJ presented these functional limitations to the VE at the hearing. (R. 72). It was appropriate for the ALJ to present Plaintiff's limitations to the VE in these vocational terms rather than as diagnoses, as the VE pointed out to Plaintiff's counsel at the hearing. (R. 77). Accordingly, the Court finds no error in the ALJ's consideration of Plaintiff's borderline intellectual functioning impairment.

Finally, the Court considers Plaintiff's strongest argument for remand, which is that the ALJ failed to document his consideration of Dr. McCracken's prior administrative medical findings in his decision. The allegation is borne out by the decision wherein the ALJ addressed other medical opinions and findings, but not those authored by Dr. McCracken. The omission is an error because ALJs may not ignore relevant evidence. *Fargnoli*, 247 F.3d at 42. Not only that, but the regulations that pertain to medical opinion evidence and prior administrative medical findings indicate that ALJs will "articulate . . . how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ's error in overlooking Dr. McCracken's findings is certainly the kind of error that might require remand for further administrative proceedings. However, as the Court has explained above, not every error requires remand. The critical inquiry is whether this error affected the outcome of Plaintiff's case.

Plaintiff suggests several reasons why she believes the ALJ's failure affected the outcome of his decision. Dr. McCracken opined a moderate concentrating limitation (R. 160) and Plaintiff argues the ALJ's ignorance of it resulted in his failure to recognize that such a limitation would cause interruptions of Plaintiff's work "20% to 30% of the time." (Doc. No. 13, pg. 16). As a result, argues Plaintiff, appropriate concentration limitations never made their way in front of the VE, *i.e.*, were not included in the RFC as they should have been. This argument is unavailing. Plaintiff cites no support for a general rule that individuals who are moderately limited in concentration are interrupted up to 30% of the workday. Further, the ALJ himself found Plaintiff to be moderately limited in concentrating, persisting, or maintaining pace based on other evidence. (R. 22). Accordingly, Dr. McCracken's finding in that regard would have been needlessly cumulative evidence.

Plaintiff also argues that Dr. McCracken's findings supported limitations that the ALJ failed to include in the RFC like limitations pertaining to interacting with others and workplace supervision. The Court disagrees. The ALJ's RFC determination includes the following non-exertional limitations: simple and routine tasks, simple work-related decisions, and stable work environment with consistent work places and processes. (R. 22). The absence of any interactional or supervision-specific limitations therein is supported by the ALJ's review of the evidence in another section of the decision where he found Plaintiff was only mildly limited in interacting with others. (R. 21). Plaintiff reported no difficulty in getting along with authority figures and indicated she had never been fired or laid off from a job because of interpersonal problems. (*Id.*). This evidence the ALJ relied on is not contrary to Dr. McCracken's findings. Dr. McCracken found Plaintiff would be moderately limited in her "ability to work in coordination with or in proximity to others without being distracted by them" and in going through a normal workday/week without interruption from her psychological symptoms. (R. 160—61). But he further found no social interaction limitation and explained that Plaintiff "would not require special supervision in order to sustain a routine," could "maintain socially appropriate behavior," and could "interact appropriately with the general public." (R. 161).

Overall, Dr. McCracken's findings generally track the ALJ's findings in a way that makes the ALJ's failure to review Dr. McCracken's findings harmless. Dr. McCracken's other relevant findings were that Plaintiff's medical records showed "depressive and anxious issues." (R. 156). He noted that Plaintiff's mental status examination "was noteworthy for depressed and anxious mood, limited insight/judgment, and irrational/tangential thoughts" and indicated that "Depression w/ Anxiety" was the diagnosis of record. (*Id.*). Dr. McCracken indicated that Plaintiff would not be significantly limited in many respects, *e.g.*, in her ability to "understand and remember very short and simple instructions." (R. 160—61). In certain other respects he indicated Plaintiff would have a moderate limitation. For example, Dr. McCracken indicated that Plaintiff would be moderately limited in understanding, remembering, and carrying out detailed instructions. (*Id.*). Consistent with these findings, the ALJ included depression and anxiety among Plaintiff's medically determinable impairments. (R. 18—19). He likewise found Plaintiff to be moderately limited in two functional areas: understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace. (R. 22). The ALJ also acknowledged Plaintiff's alleged mental health symptoms, which included "anxiety and depression crying episodes," as well as "difficulty concentrating." (R. 23). In his review of the objective evidence, the ALJ noted that Plaintiff had some mental health support and that her mental status examination showed, *inter alia*, "depressed and anxious mood." (R. 25). Considering the ALJ's discussion of the mental impairments evidence of record, the Court finds no harmful error in the ALJ's failure to evaluate the persuasiveness of Dr. McCracken's prior administrative medical findings. Dr. McCracken's findings were so similar to the ALJ's findings, it seems the ALJ's error in overlooking Dr. McCracken's findings made no difference. *Holloman*, 639 Fed. Appx. at 814.

6

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 12) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 14) is GRANTED as specified above.

s/ Alan N. Bloch
United States District Judge

ecf:   Counsel of Record

---

In conclusion, the Court finds that the ALJ's decision, though imperfect, contains enough evidence in support of the findings therein that a reasonable mind would be satisfied. This is all that is required pursuant to the deferential substantial evidence standard. Plaintiff has not convincingly argued that the errors alleged—particularly the ALJ's failure to address Dr. McCracken's findings—affected the outcome of her case.